OPINION
{¶ 1} Plaintiffs-Appellants, Robert D. Lightle, Patricia W. Lightle and Aquatic Biome Conservancy Foundation, appeal the decision of the Fayette County Court of Common Pleas dismissing their action against the City of Washington Court House ("the City"). We affirm.
 {¶ 2} Appellants Robert and Patricia Lightle ("the Lightles") own a 7.505-acre tract of "low flood plane [sic] land" situated along the east fork of the Paint Creek in Washington *Page 2 
Court House. Within the property is a 3.05-acre portion that runs along the creek which the Lightles consider a "wetland." As such, the Lightles allow the 3.05-acre tract to develop in its natural state and do not mow or trim the grass and brush located on the 3.05 acres.
 {¶ 3} On July 14, 2004, the Washington Court House City Council passed Ordinance 55-2004. The ordinance authorized the City to mow any property "upon which grass and noxious weeds exceed the height of eight (8) inches." The ordinance further stated that the costs of any such mowing could be billed to the owner of the property.
 {¶ 4} In the summer of 2005, the City received many complaints from residents of Washington Court House about the 3.05-acre tract on Lightles' property. The complaints cited the extreme length of the grass and brush on the property and alleged an infestation of mosquitoes and rodents resulting from the overgrowth. The City sent appellants a citation for violation of the ordinance. The Lightles failed to respond and the City mowed the property; billing the Lightles for the cost. In October, the City again issued a citation and mowed the Lightles' property, invoicing them accordingly.
 {¶ 5} On May 5, 2006, the City sent the Lightles a third notice of violation. The Lightles filed a Complaint for Injunction and Declaratory Relief in the Fayette County Court of Common Pleas. The Lightles alleged in their complaint that the ordinance was unconstitutional and preempted by Ohio law protecting wetlands. The City agreed not to mow the property until the court had an opportunity to review the matter and, as a result, the court granted a preliminary injunction to the Lightles.
 {¶ 6} On May 20, 2006, appellants filed Initial Articles of Incorporation with the Secretary of State of Ohio to establish the Aquatic Biome Conservancy Foundation ("Aquatic Biome"). The incorporators were listed as: Robert D. Lightle, Patricia Lightle and Alexandra J. Lightle. On June 14, 2006, the Lightles granted to Aquatic Biome a conservation easement for the 3.05-acre tract. Thereafter, Aquatic Biome filed a motion to intervene as *Page 3 Fayette CA2006-08-033 the holder of a conservation easement on the 3.05-acre tract and the Lightles filed a motion to file a second amended complaint to include Aquatic Biome as a plaintiff in the case. The motions were pending on the date of trial. Deciding to move forward with the trial, the City did not object to the motions and the trial court granted Aquatic Biome's motion to intervene and also allowed the second amended complaint to be filed, including Aquatic Biome as a plaintiff.
 {¶ 7} Trial commenced on July 5, 2006. At trial, Dan Osterfeld of the Ohio Environmental Protection Agency testified on behalf of appellants. Osterfeld testified that he visited the tract on June 22, 2005 where he conducted "a couple of soil probes," and viewed the vegetation and wildlife. Osterfeld further testified that he "believed [the tract] is a wetland maybe marginally so" and was, in his opinion, a "category 1 low quality" wetland.
 {¶ 8} On July 25, 2006, the trial court entered a judgment of dismissal against appellants on the basis that the ordinance was enacted pursuant to a proper exercise of police power and the ordinance was not preempted by state law. The trial court held "that maintenance of aesthetics within the city is a proper exercise of police power. The court further finds that this ordinance does bear a direct relation to the health, safety and general welfare of the community." The trial court further held, "[this] court cannot conclude, as a matter of law" that a conflict exists between the ordinance and the wetland preservation statutes and administrative regulations and, therefore, the ordinance is not preempted. Appellants timely appealed, raising two assignments of error.
 {¶ 9} Assignment of Error No. 1:
 {¶ 10} "THE TRIAL COURT ERRED IN DECIDING THAT ORDINANCE NO. 55-2004 OF THE CITY OF WASHINTON COURT HOUSE, OHIO, WAS NOT PREEMPTED BY OHIO STATE LAW AND VIOLATED OHIO'S HOME RULE PROVISION OF ARTICLE XVIII, SECTION 3 OF THE OHIO CONSTITUTION AS IT APPLIES TO THE 3.05 AC. WETLAND *Page 4 
OF THE PLAINTIFFS."
 {¶ 11} Our standard of review for a trial court's judgment of dismissal is de novo. State ex rel. Dickens v. Moore, Warren App. No. CA2006-03-035, 2006-Ohio-5503, ¶ 10; Hunt v. Marksmen Prod., Div. of S/RIndustries, Inc. (1995), 101 Ohio App.3d 760, 762.
 {¶ 12} Appellants argue in their first assignment of error that Washington Court House Ordinance No. 55-2004 is a violation of the Home Rule Amendment to the Ohio Constitution and is preempted by Ohio law. Specifically, appellants claim the 3.05-acre tract of property is a wetland protected under R.C. 6111.04, R.C. 5301.67 through R.C. 5301.70, and Ohio Adm. Code 3745-1-51, and the ordinance is preempted by those sections of the Ohio Revised and Administrative Codes. Additionally, appellants claim that since the Lightles created a conservation easement and granted the easement to Aquatic Biome, the 3.05-acre tract is protected pursuant to the terms of the easement.
 {¶ 13} Ohio Adm. Code 3745-1-51 provides, in sum, that existing conditions of wetlands shall be protected, including all flora and fauna in the wetland, and any alteration of the natural conditions of a wetland is considered pollution. R.C. 6111.04 prohibits all acts of pollution in waters of the state, unless the person causing the pollution has a permit. Further, R.C. 5301.67 through R.C. 5301.70
govern the creation, ownership and enforcement of conservation easements.
 {¶ 14} Initially, for a parcel of property to receive the protections afforded to wetlands, the parcel must, in fact, be a wetland. Therefore, the threshold inquiry for this case is to determine whether the property at issue is a wetland. Appellants claim the 3.05-acre tract of land is a wetland and, as a result, is protected pursuant to the provisions of the Revised and Administrative Codes which they cite.
 {¶ 15} "Wetlands" are defined as "those areas that are inundated or saturated by surface or ground water at a frequency and duration that are sufficient to support, and that *Page 5 
under normal circumstances do support, a prevalence of vegetation typically adapted for life in saturated soil conditions. `Wetlands' includes swamps, marshes, bogs, and similar areas that are delineated in accordance with the 1987 United States Army Corps of Engineers wetland delineation manual and any other procedures and requirements adopted by the United States army corps of engineers for delineating wetlands." R.C. 6111.02(P).
 {¶ 16} Additionally, the Ohio Environmental Protection Agency ("OEPA") has been established to control and prevent pollution to the environment in Ohio, including "comprehensive water resource management." R.C.3745.01. Further, the director of the OEPA is required to "establish an anti-degradation policy applicable to surface waters of the state pursuant to applicable federal laws and regulations." R.C. 6111.12(A). Under the anti-degradation policy, "[e]ach wetland shall be assigned a category by Ohio EPA for the purpose of reviews of projects pursuant to this rule." Adm. Code 3745-1-54(B)(2)(a). The policy defines three categories of wetlands, and lists factors to determine which category is assigned to a wetland. Id. The factors include soil characteristics, vegetation, and wildlife that are supported by each category of wetland. Id. Each category is protected from pollution and alteration by the Ohio Revised and Administrative Codes. R.C. 6111.04.
 {¶ 17} Furthermore, a comprehensive water pollution control program has also been enacted and is overseen by the OEPA. R.C. 6111. The program includes two main sections, wetlands ecology and water quality certification. Id. Under the "Water Quality Certification" section, the OEPA is granted authorization to review all applications regarding any project that would physically impact any water of the state, including wetlands. Id. Under the wetlands ecology section, criteria for research, assessment, and permits for wetlands are designated to the OEPA. Id.
 {¶ 18} In addition, the federal government has also established environmental regulations and procedures dealing with wetlands and the protection thereof by creating the *Page 6 
United States Environmental Protection Agency ("U.S. EPA"). See Title 40, C.F.R.
 {¶ 19} It is clear from these comprehensive regulatory schemes which create the OEPA and the U.S. EPA that these agencies have been designated the authority to regulate wetlands. Further, these agencies have been provided criteria to determine whether property is a wetland and what category of wetland it may be. Due to the specialization and authority granted to these agencies relating to wetlands and to maintain uniformity in the agency's policy, a proper designation can only be made by these agencies. The proper entity to designate property is the EPA, not a court. Absent a proper designation or classification showing that the property is a wetland, appellants cannot claim the property is a protected wetland.
 {¶ 20} In the instant matter, appellants claim the 3.05-acre tract of land is a "wetland." To support their claim, appellants offered the testimony of Dan Osterfeld, an employee of the OEPA Division of Service Water, as evidence that the tract is a wetland and protected pursuant to the Revised and Administrative Code. At trial, Osterfeld testified that he visited the appellants' property on June 22, 2006, where he walked along the 3.05-acre tract for up to forty-five minutes, conducted "a couple of soil probes," and observed the vegetation and wildlife on the tract. Osterfeld stated, "I believe it is a wetland maybe marginally so * * * in certain areas there were quite a few wetland plants the hydric soils were there the hydrology was there uh therefore I believe it would probably meet the criteria for a wetland." Osterfeld further testified that, in his opinion, the 3.05-acre portion was a "category 1 low quality" wetland.
 {¶ 21} Appellants, though, have not provided any documentation from the OEPA or the U.S. EPA officially designating or classifying the property as a wetland. Osterfeld's testimony, although probative of the characteristics and criteria of the tract, is not an official designation by the OEPA. Osterfeld stated that the property may be "marginally" a wetland, *Page 7 
and that he "believes" the property "would meet the criteria for a wetland." This testimony is merely an observation and opinion, albeit from an employee of the OEPA, not an official designation by the OEPA. Nor does Osterfeld's testimony conclusively prove that the 3.05-acre tract is a wetland. The OEPA or the U.S. EPA is the proper agency to determine or classify the property. Absent an official designation or classification by the proper administrative agency, appellants cannot meet the threshold determination that the property is a protected wetland. Having failed to first establish that the tract has been designated or classified as a wetland by the proper administrative agency, appellants cannot claim that the 3.05-acre tract is entitled to receive the statutory protections afforded to wetlands, which they claim preempt the ordinance.
 {¶ 22} Appellants' first assignment of error is overruled.
 {¶ 23} Assignment of Error No. 2:
 {¶ 24} "THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FINDING THAT THE CITY OF WASHINTON COURT HOUSE'S CITY ORDINANCE 55-2004 WAS NOT VOID AND UNCONSITUTIONAL FOR VAGUENESS."
 {¶ 25} Appellants argue in their second assignment of error that the ordinance is unconstitutional. Specifically, appellants argue the definition of "grass and noxious weeds" is too vague to be enforced and that the ordinance is enforced in an arbitrary, capricious, and generally discriminating way which interferes with the owners' enjoyment of their land.
 {¶ 26} Initially, we note that legislative enactments are afforded a strong presumption of constitutionality. Adamsky v. Buckeye Local SchoolDist. (1995), 73 Ohio St.3d 360, 361. However, that presumption is rebuttable. Id., citing State ex rel. Dickman v. Defenbacher (1955), 164 Ohio St. 142, paragraph one of the syllabus. The party challenging the enactment bears the burden of proving, beyond a reasonable doubt, that the enactment is incompatible with a particular constitutional provision. See Oliver v. Feldner, *Page 8 149 Ohio App.3d 114, 2002-Ohio-3209, ¶ 37.
 {¶ 27} When asserting that a statute is unconstitutional because it is void for vagueness, the challenging party must show that the statute is vague "not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all." Coates v.Cincinnati (1971), 402 U.S. 611, 614. Therefore, the challenger must show that, after examining the statute, a person of ordinary intelligence would not be able to understand what he is required to do under the law. State v. Anderson (1991), 57 Ohio St.3d 168, 171. Accordingly, the challenger must prove beyond a reasonable doubt "that the statute was so unclear that he could not reasonably understand that it prohibited the acts in which he engaged." Id.
 {¶ 28} When analyzing a statute under the void for vagueness doctrine, a three-part analysis must be applied. State v. Collier (1991),62 Ohio St.3d 267, 269. First, the wording of the statute must provide fair warning to the ordinary citizen so that citizens may conform their behavior to the requirements of the statute. Id. at 270. Second, the wording of the statute must preclude arbitrary, capricious and discriminatory enforcement. Id. Finally, the wording of the statute should not unreasonably impinge or inhibit fundamental constitutionally protected freedoms. Id.
 {¶ 29} Appellants first argue the ordinance is void for vagueness because the definition of "grass" in the statute is too broad and does not provide sufficient notice. Appellants cite the fact that the ordinance identifies "grass" to be "interpreted to mean any of a large family (Gramineae) of the monocotyledonous, mostly herbaceous plants with jointed stems, slender sheating leaves, and flowers borne in spikelets of bracts." Accordingly, appellants submit an exhibit identifying that the "gramineae" family also includes wheat, rice, corn, oats, barley, rye, bamboo, sugarcane, sorghum, and fescue. Appellants, therefore, *Page 9 
argue that the definition of "grass" in the ordinance is overly vague because it includes agricultural crops which the city does not mow.
 {¶ 30} Appellants' argument is unpersuasive. "The essence of the vagueness doctrine is notice. An ordinance must be sufficiently clear in defining the activity proscribed so that it informs those who are subject to it what conduct on their part will render them liable to its penalties." Cleveland v. Isaacs (1993), 91 Ohio App.3d 360, 364. The ordinance is clear and specific in its identification of "grass and noxious weeds over eight inches in length." Further, the ordinance provides a sufficient definition of "grass." Included in the document appellant submits which identifies "gramineae" is a statement that "[p]opularly the word grass is used chiefly for * * * lawn grass types," not agricultural crops.
 {¶ 31} Secondly, appellants argue that the ordinance allows city officials to enforce the ordinance in an arbitrary, capricious, and generally discriminatory manner. Appellants claim that the ordinance delegates basic policy matters for resolution on an ad hoc because the designated city official can subjectively enforce the ordinance. Appellants' argument is unpersuasive. Appellants' argument is based only on speculation and appellants offer no proof of arbitrary, capricious, or discriminatory enforcement. Further, the reason appellants were issued a citation in this case, and their property was mowed thereafter by the City, was because the city received complaints about the property.
 {¶ 32} Next, appellants argue that the public interest for the ordinance is insufficient to justify the impingement on their constitutional right to enjoyment of their property and right of the charitable organization to hold a conservation easement.
 {¶ 33} An ordinance will not be disturbed unless it is shown that the action taken by the municipality in denying a property owner the unrestricted use of his property is arbitrary, capricious and bears no reasonable relationship to the health, safety, morals or general welfare of the public. City of Pepper Pike v. Landskroner (1997),53 Ohio App.2d 63, 70. *Page 10 
Further, the Ohio Supreme Court has recognized that maintenance of aesthetics in a community is a valid exercise of the police power. SeeHudson v. Albrecht, Inc. (1984), 9 Ohio St.3d 69. In this case, the trial court found, and this court agrees, that the ordinance was a valid exercise of the City's police power, bearing a direct relation to the health, safety and general welfare of the community, because it furthered the City's interest to maintain aesthetics. Tall grass and noxious weeds may provide a breeding ground for mosquitoes and rodents.City of Mayfield Heights v. Barry, Cuyahoga App. No. 82129, 2003-Ohio-4065. Tall vegetation might also impair the vision of law enforcement officers and other safety forces. Id.
 {¶ 34} Appellants claim that their property is a wetland to which aesthetic considerations do not apply because Oesterfeld testified at trial that "wetlands do not increase insect and mosquito populations because of the balance of the natural predators, like dragon flies, amphibians, and birds that feed on the insects and mosquitoes." However, as discussed above, appellants have not demonstrated that the property is in fact a wetland.
 {¶ 35} Appellants' second assignment of error is overruled.
 {¶ 36} Judgment of dismissal of appellants' cause of action is affirmed.
 YOUNG, P.J., and WALSH, J., concur. *Page 1