**STATE of Ohio ex rel. RODENBERG, Sheriff,**

v.

**GARVAS et al.**

2007-Ohio-7272.]

Court of Common Pleas of Ohio,
Clermont County.

No. 2007 CVH 0485.

Decided Nov. 13, 2007.

2

**4**

Don White, Clermont County Prosecuting Attorney, and Mary Lynne Birck, Assistant Prosecuting Attorney.

William Gustavson, for respondent Jeff Garvas.

Graydon, Head & Ritchey, L.L.P., John C. Greiner, and Jeffrey B. Allison, for respondent Gregory Korte.

HADDAD, Judge.

{¶ 1} This matter came before the court on October 9, 2007, pursuant to a motion to dismiss, filed by the respondent, Gregory Korte. The relator, Sheriff A.J. Rodenberg, was represented by Assistant Prosecutor Mary Lynne Birck. The respondent, Jeff Garvas, was represented by attorney William Gustavson. The respondent, Gregory Korte, was represented by attorneys John Greiner and Jeffrey Allison. The attorney general, Marc Dann, and the governor, Ted Strickland, were dismissed from the relator's complaint pursuant to a voluntary dismissal filed by the relator on September 11, 2007.[1] Upon hearing oral arguments on the motion, the court took the matter under advisement, and now renders the following decision.

## FINDINGS OF FACT

{¶ 2} The relator filed his complaint seeking declaratory relief pursuant to R.C. Chapter 2721 and Civ.R. 57 on March 15, 2007.[2] In his complaint, the relator

---

1. The court is aware that, effective September 24, 1999, R.C. 2721.12(A), a provision of the Declaratory Judgment Act, requires a party challenging the constitutionality of a statute to serve the attorney general with a copy of the complaint so that the state has an opportunity to be heard. The court notes that the attorney general was served with a copy of the complaint, since he was originally a party to the action. The attorney general filed an answer to the relator's complaint on April 30, 2007, and an amended answer to the relator's complaint on August 17, 2007. The attorney general did not appear at the hearing on the respondent's motion to dismiss, held on October 9, 2007.

2. The court notes that parties to this action could be referred to as Plaintiff and Defendants, since the sheriff is not seeking a writ of mandamus, prohibition, or quo warranto. The court,

asserts that Jeff Garvas and Gregory Korte made a written request to provide the name, county of residence, and date of birth of each person to whom the sheriff has issued a license or replacement license to carry a concealed handgun, renewed a license to carry a concealed handgun, or issued a temporary emergency license or replacement temporary emergency license to carry a concealed handgun.[3] Specifically, Korte requested that the information be given in the form of a list.[4] Both Korte and Garvas represented that they are journalists as defined in R.C. 2923.129(B)(2) and are entitled to the information under that provision.[5] Garvas represented that his employer is Ohioans for Concealed Carry, Inc., which publishes freelance news on a news-based website and in a quarterly publication known as OFCC News.[6] He further asserted that this request would be in the public interest.[7] Korte represented that he is employed by the Cincinnati Enquirer.[8] He asserted that this request would be in the public interest.[9]

{¶ 3} However, the sheriff contends that he cannot fulfill this duty without possibly subjecting himself to prosecution. He argues that the statute requires him to disclose this information to journalists, while providing that he can be subject to criminal penalties if he discloses the information to nonjournalists. He further argues that the statute violates the Equal Protection Clause because it permits journalists to be treated differently from nonjournalists with respect to the requesting and receiving of records relative to Ohio's concealed-handgun law. He argues that since he is not a journalist, he could be charged with a felony for disclosing the same information to the public that a journalist can disclose with no criminal penalty. The sheriff further asserts that this statute denies the sheriff's right to free speech under the First Amendment. Finally, the sheriff contends that the statute violates the Fifth and Fourteenth Amendments to the Constitution and is void for vagueness. For the foregoing reasons, the sheriff contends

---

however, in keeping consistent with the caption of the case, will refer to the parties as relator and respondents.

3. See Complaint ¶ 9 and ¶ 20.

4. See Complaint Exhibit 2.

5. See Complaint ¶ 10 and ¶ 21.

6. See Complaint ¶ 11 and Exhibit 1.

7. Id.

8. See Complaint ¶ 22 and Exhibit 2.

9. Id.

**6**

that this court should declare that the respondents are journalists or, in the alternative, declare the statute unconstitutional.

{¶ 4} On April 16, 2007, the respondent, Gregory Korte, filed a motion to dismiss for lack of standing and for failure to state a claim upon which relief can be granted.[10] A hearing was held on the motion on October 9, 2007.[11]

## THE LEGAL STANDARD

{¶ 5} The court cannot grant a Civ.R.12(B)(6) motion for failure to state a claim upon which relief can be granted unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Avery v. Rossford Transp. Improvement Dist.* (2001), 145 Ohio App.3d 155, 164, 762 N.E.2d 388. See also *Guess v. Wilkinson* (1997), 123 Ohio App.3d 430, 434, 704 N.E.2d 328, 330, citing *York v. Ohio State Hwy. Patrol* (1991), 60 Ohio St.3d 143, 144, 573 N.E.2d 1063. All factual allegations of the complaint must be taken as true, and all reasonable inferences must be drawn in favor of the nonmoving party. *Avery* at 164, 762 N.E.2d 388, citing *Mitchell v. Lawson Milk Co.* (1988), 40 Ohio St.3d 190, 192, 532 N.E.2d 753. However, the court does not have to presume the truth of conclusions unsupported by factual allegations. *Guess* at 434, 704 N.E.2d 328. Further, the court can consider only materials and evidence found within the complaint when determining a Civ.R. 12(B)(6) dismissal.

## LEGAL ANALYSIS

{¶ 6} The threshold question in all legal claims is the issue of standing. The standing requirement "embodies general concerns about how courts should function in a democratic system of government." *State ex rel. Ohio Academy of Trial Lawyers v. Sheward* (1999), 86 Ohio St.3d 451, 469, 715 N.E.2d 1062. "The judicial 'power to declare legislative enactments unconstitutional is not a superior power, neither one of veto nor of greater wisdom. It is rather a power burdened with a duty—a duty to determine in particular cases whether the Legislature has reached and passed the extreme boundary of its legislative power.'" Id., quoting *Ostrander v. Preece* (1935), 129 Ohio St. 625, 629, 3 O.O. 24, 196 N.E. 670. "Thus, the judicial function does not begin until after the legislative process is completed

---

**10.** The respondent's motion to dismiss is captioned "Motion to Dismiss for Lack of Standing and for Failure to State a Claim." However, the court notes that the respondent also argues in his motion that the relator's claims are not ripe for judicial review.

**11.** The respondent, Jeff Garvas, has pending counterclaims and crossclaims on these same issues. The court notes that there has been no motion to dismiss Jeff Garvas's claims filed with this court; therefore, this decision relates only to the relator's complaint against the respondents.

and 'the void law is about to be enforced against a citizen to his prejudice.' " Id., quoting *Pfeifer v. Graves* (1913), 88 Ohio St. 473, 488, 104 N.E. 529, 533. Otherwise, if "no private rights of person or property are in jeopardy, * * * [w]e are simply asked to regulate the affairs of another branch of government in a matter quite outside and independent of our authority." *Pfeifer v. Graves,* supra, at 488, 104 N.E. 529. " 'It has been long and well established that it is the duty of every judicial tribunal to decide actual controversies between parties legitimately affected by specific facts and to render judgments which can be carried into effect. It has become settled judicial responsibility for courts to refrain from giving opinions on abstract propositions and to avoid the imposition by judgment of premature declarations or advice upon potential controversies. The extension of this principle includes enactments of the General Assembly.' " *Sheward* at 469, 715 N.E.2d 1062, quoting *Fortner v. Thomas* (1970), 22 Ohio St.2d 13, 14, 51 O.O.2d 35, 257 N.E.2d 371.

{¶ 7} "A party lacks standing to invoke the jurisdiction of the court unless he has, in an individual or representative capacity, some real interest in the subject matter of the action." *State ex rel. Dallman v. Franklin Cty. Court of Common Pleas,* (1973), 35 Ohio St.2d 176, 64 O.O.2d 103, 298 N.E.2d 515, syllabus. " 'The question of standing is whether a litigant is entitled to have a court determine the merits of the issues presented.' " *Cuyahoga Cty. Bd. of Commrs. v. State* (2006), 112 Ohio St.3d 59, 2006-Ohio-6499, 858 N.E.2d 330, ¶ 22, quoting *Ohio Contrs. Assn. v. Bicking* (1994), 71 Ohio St.3d 318, 320, 643 N.E.2d 1088. In Ohio, a litigant has standing to attack the constitutionality of a legislative enactment only if the litigant " 'has suffered or is threatened with direct and concrete injury in a manner or degree different from that suffered by the public in general, that the law in question has caused the injury, and that the relief requested will redress the injury.' " Id., quoting *State ex rel. Ohio Academy of Trial Lawyers v. Sheward,* 86 Ohio St.3d at 469–470, 715 N.E.2d 1062. " 'Whether established facts confer standing to assert a claim is a matter of law.' " Id., quoting *Portage Cty. Bd. of Commrs. v. Akron,* 109 Ohio St.3d 106, 2006-Ohio-954, 846 N.E.2d 478, at ¶ 90. Further, "[s]tanding requires demonstration of a concrete injury in fact, rather than an abstract or suspected injury." *State ex rel. Consumers League of Ohio v. Ratchford* (1982), 8 Ohio App.3d 420, 8 OBR 544, 457 N.E.2d 878, paragraph three of the syllabus. However, it is not necessary that the person violate the statute in order for the court to find that standing exists. *Peltz v. S. Euclid* (1967), 11 Ohio St.2d 128, 40 O.O.2d 129, 228 N.E.2d 320, paragraph one of the syllabus.

{¶ 8} The statute in question provides:

(2)(a) A journalist, on or after April 8, 2004, may submit to a sheriff a signed, written request to view the name, county of residence, and date of birth of each

person to whom the sheriff has issued a license or replacement license to carry a concealed handgun, renewed a license to carry a concealed handgun, or issued a temporary emergency license or replacement temporary emergency license to carry a concealed handgun under section 2923.125 or 2923.1213 of the Revised Code, or a signed, written request to view the name, county of residence, and date of birth of each person for whom the sheriff has suspended or revoked a license to carry a concealed handgun or a temporary emergency license to carry a concealed handgun under section 2923.128 of the Revised Code. The request shall include the journalist's name and title, shall include the name and address of the journalist's employer, and shall state that disclosure of the information sought would be in the public interest. If a journalist submits a signed, written request to the sheriff to view the information described in this division, the sheriff shall grant the journalist's request. The journalist shall not copy the name, county of residence, or date of birth of each person to or for whom the sheriff has issued, suspended, or revoked a license described in this division.

(b) As used in division (B)(2) of this section, 'journalist' means a person engaged in, connected with, or employed by any news medium, including a newspaper, magazine, press association, news agency, or wire service, a radio or television station, or a similar medium, for the purpose of gathering, processing, transmitting, compiling, editing, or disseminating information for the general public.

R.C. 2923.129(B)(2).[12]

{¶ 9} The statute clearly places a duty on the sheriff to disclose certain information regarding the licensing of a concealed handgun. Likewise, the statute clearly defines who may receive the requested information; therefore, the sheriff need only make sure that the requirements are satisfied. Those requirements are as follows:

1. a written request must be made to the sheriff and signed by a journalist;

2. the written request must contain the journalist's name and title;

3. the written request must contain the name and address of the journalist's employer;

4. the written request must contain a statement that disclosure of the information sought would be in the public interest; and

5. the journalist must be engaged in, connected with, or employed by any news medium for the purpose of gathering, processing, transmitting,

---

12. 2006 Sub.H.B. No. 9, effective September 29, 2007.

compiling, editing, or disseminating information for the general public. R.C. 2923.129(B)(2)(a) and (b).

{¶ 10} The court notes that the Erie County Court of Common Pleas, in a decision issued on June 4, 2007, determined that the sheriff does not have standing to bring this action;[13] however, this court finds that sheriff Rodenberg does have standing to bring the current action. The statute clearly places a duty on the sheriff to grant a journalist's request to view concealed-handgun information so long as the journalist complies with the five requirements previously identified. R.C. 2923.129(E) makes it a felony of the fifth degree to illegally release confidential concealed-handgun license records. Since it is the sheriff who retains these confidential records and since the statute places a duty on the sheriff to allow journalists who comply with the statute to view the records, the court finds that the sheriff is subject to criminal liability if he permits someone to view these records who did not comply with the statutory requirements. Moreover, the threat of criminal liability is a direct and concrete injury that is statutorily mandated; therefore, the court finds that the sheriff does have standing to bring the current action.

{¶ 11} The court finds, however, that this case is not ripe for judicial review.[14] "Ripeness 'is peculiarly a question of timing.' " *State ex rel. Elyria Foundry Co. v. Indus. Comm. of Ohio* (1998), 82 Ohio St.3d 88, 89, 694 N.E.2d 459, quoting *Regional Rail Reorganization Act Cases* (1974), 419 U.S. 102, 140, 95 S.Ct. 335, 357, 42 L.Ed.2d 320, 351. This doctrine is motivated by a desire " 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies.' " Id., quoting *Abbott Laboratories v. Gardner* (1967), 387 U.S. 136, 148, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681, 691.

> The basic principle of ripeness may be derived from the conclusion that "judicial machinery should be conserved for problems which are real or present and imminent, not squandered on problems which are abstract or hypothetical or remote." * * * [T]he prerequisite of ripeness is a limitation on jurisdiction that is nevertheless basically optimistic as regards the prospects of a day in court: the time for judicial relief is simply not yet arrived, even though the alleged action of the defendant foretells legal injury to the plaintiff.

---

**13.** See *State ex rel. Lyons, Sheriff v. Garvas* (June 4, 2007), Erie Common Pleas No. 2007–CV–0267.

**14.** The court notes that the difference between standing and ripeness is that standing involves whether the relator is the proper party whereas ripeness involves whether the challenge is brought at the appropriate time. *Natl. Rifle Assn. of Am. v. Magaw* (C.A.6, 1997), 132 F.3d 272, 280.

Id., quoting Comment, Mootness and Ripeness: The Postman Always Rings Twice (1965), 65 Colum. L.Rev. 867, 876.

{¶ 12} The court must apply a two-part test in determining whether a controversy is ripe for review, or justiciable in character. " '[F]irst to determine whether the issues tendered are appropriate for judicial resolution, and second to assess the hardship to the parties if judicial relief is denied at that stage.' " *Burger Brewing Co. v. Liquor Control Comm.* (1973), 34 Ohio St.2d 93, 97, 63 O.O.2d 149, 296 N.E.2d 261, quoting *Toilet Goods Assn. v. Gardner* (1967), 387 U.S. 158, 162, 87 S.Ct. 1520, 1523, 18 L.Ed.2d 697. Applying this standard, the court finds that this action is not appropriate for judicial resolution because prosecution is not imminent. This is true so long as the sheriff complies with the statutory requirements. The court finds that the statute does not hold the sheriff liable for any fraud that is perpetrated upon him by a purported journalist and that he is expressly immune from civil liability pursuant to R.C. 2923.129(A)(1) if he makes a good faith effort to perform his duties. Further, the statute does not require that the sheriff make a determination whether the purported journalist is actually a journalist, but instead requires the sheriff to determine whether the purported journalist is connected with some type of news medium. The statute is very broad in terms of its definition of a journalist; therefore, the court finds that any violation that would subject the sheriff to prosecution is too remote.

{¶ 13} The court would like to note that legislative enactments are afforded a strong presumption of constitutionality. *Lightle v. Washington Court House,* Fayette App. No. CA2006–08–033, 2007-Ohio-2069, 2007 WL 1248171, ¶ 26, citing *Adamsky v. Buckeye Local School Dist.* (1995), 73 Ohio St.3d 360, 361, 653 N.E.2d 212. See also *State ex rel. White v. Billings,* Clermont App. No. CA2006–09–072, 2007-Ohio-4356, 2007 WL 2410895, ¶ 7; *Lebanon v. McClure* (1988), 44 Ohio App.3d 114, 116, 541 N.E.2d 1073. This presumption of constitutionality is rebuttable. Id., citing *State ex rel. Dickman v. Defenbacher* (1955), 164 Ohio St. 142, 57 O.O. 134, 128 N.E.2d 59, paragraph one of the syllabus. "The party challenging the enactment bears the burden of proving, *beyond a reasonable doubt,* that the enactment is incompatible with a particular constitutional provision." Id., citing *Oliver v. Feldner* (2002), 149 Ohio App.3d 114, 776 N.E.2d 499, ¶ 37. "It has also been the practice for courts to liberally construe a statute in order to save it from constitutional infirmities." *McClure,* 44 Ohio App.3d at 116, 541 N.E.2d 1073, citing *State v. Slatter* (1981), 66 Ohio St.2d 452, 20 O.O.3d 383, 423 N.E.2d 100. The court need not, however, address the constitutionality of the statute in question, since the court has found that the relator has standing to bring this action but the claims are not ripe for judicial review.

## CONCLUSION

{¶ 14} For the foregoing reasons, the court finds that the relator has standing to bring this action but that the claims are not ripe for judicial review; therefore, the respondent's motion to dismiss as to the relator's complaint is granted. The court will not address the respondent's Civ.R. 12(B)(6) motion to dismiss, since that issue is moot as a result of the court's dismissal.

{¶ 15} It is ordered that this decision shall serve as the judgment entry in this matter.

{¶ 16} It is further ordered that the court finds no just cause for delay.

Cause dismissed.